# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MANUAL GONZALEZ,

     Petitioner,

v.                                   Case no. 8:07-CV-1081-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY GENERAL,
STATE OF FLORIDA,

     Respondents.

_____/

## AMENDED ORDER

THIS CAUSE comes before the Court upon the petition of Manual Gonzalez for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (Dkt. #1), the Government's Response (Dkt. #17) filed in opposition thereto, and Petitioner's Reply (Dkt. #22). Because the Petitioner fails to meet the standards of 28 U.S.C. §2254 (d), the petition will be denied.

## BACKGROUND

Manual Gonzalez (hereinafter referred to as "Petitioner" or "Gonzalez") was found guilty of four counts of sexual battery on a child and two counts of lewd or lascivious acts on a child. Petitioner was adjudicated guilty in accordance with the verdicts and sentenced to life imprisonment on each of the sexual battery counts, to run concurrently. Prison terms of 73 months were imposed on the lewd conduct counts which ran concurrently with each other and consecutively to the sexual battery sentences.

Petitioner appealed and, after briefing on a state law hearsay issue, the state appellate court affirmed without written opinion. Gonzalez v. State, 780 So. 2d 69 (Fla. 2nd DCA 2000). He did not seek rehearing; nor did he pursue certiorari review in the United States Supreme Court.

Petitioner then filed a *pro se* motion for post-conviction relief under Florida Rules of Criminal Procedure 3.850 which was initially denied without an evidentiary hearing. On appeal of the summary denial, the state appellate court affirmed with the exception of Petitioner's claim in which he faulted his trial counsel for not objecting to the prosecutor's closing argument. Gonzalez v. State, 829 So. 2d 323 (Fla. 2d DCA 2002). On remand, the post-conviction court again summarily denied relief on said ground.

On appeal of the second summary denial, the state appellate court in Gonzalez v. State, 851 So. 2d 859 (Fla. 2d DCA 2003), again reversed and remanded for further proceedings. An evidentiary hearing was held December 14, 2004, on the outstanding rule 3.850 claim. (Resp. Ex. 10, Vol. 7, Rcd. at 1309). By final order rendered October 28, 2005, the post-conviction court denied the ground on which the hearing was held. (Resp. Ex. 10, Vol. 7, Rcd. at 1175).

On appeal, the state appellate court per curiam affirmed without written decision. Gonzalez v. State, 941 So. 2d 375 (Fla. 2nd DCA 2006). The mandate issued November 20, 2006. Petitioner timely filed the instant petition on June 18, 2007.

Petitioner raises the following grounds in support of this petition:

**Ground One**:    Trial counsel was ineffective for failing to object and preserve for appellate review that victim's testimony was taken without an oath under Fla. Stat. 90.605(2).

**Ground Two**:    Trial counsel was ineffective for failing to rely on exceptions to Florida's rape shield law and to object to the prosecutor's improper statements.

**Ground Three**:    Trial counsel was ineffective for failing to bring to the court's attention that Petitioner, a foreign national, was not informed of his right to consult with the consular or diplomatic officer of Cuba.

**Ground Four**:    Trial counsel was ineffective for failing to timely file a motion in limine and/or to object when hearsay statements were admitted.

## AEDPA STANDARD OF REVIEW

The standard of review in a federal habeas corpus proceeding is quite strict, resulting in a very heavy burden on the petitioner to successfully overturn a state court conviction. Since Petitioner's conviction was entered after the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996,[1] see <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997), his petition is subject to the provisions thereof. Pursuant to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[1]The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. See 28 U.S.C. § 2244(d)(1).

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) - (2). Congress, in passing the AEDPA, also erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing. Crawford v. Head, 311 F.3d 1288, 1328-29 (11th Cir. 2002); see also 28 U.S.C. §2254(e)(2).[2]

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. See Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006). "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc). It is well established that to

---

[2]§ 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. The Supreme Court has interpreted § 2254(e)(2) to mean that a petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court (subject to the very narrow exceptions set out in § 2254(e)(2)). Williams v. Taylor, 529 U.S. at 433-34.

prevail on an ineffective assistance claim, the accused must satisfy the two-prong inquiry of Strickland v Washington, 466 U.S. 668, 687 (1984).

First, Petitioner must demonstrate that his attorney's performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000)(citations omitted). The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." Id. at 1313. There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. See id. at 1317.

The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Id. at 1313. Instead the test is . . . whether what they did was within the "wide range of reasonable professional assistance." Id. at n.12. The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. See Strickland, 466 U.S. at 689. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1316.

Second, Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If Petitioner fails to establish either deficient performance or prejudice, the court need not address the other prong. Id. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); see also Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). The standards of effective assistance set forth in Strickland apply to appellate counsel, as well as to trial counsel. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987).

## **DISCUSSION**

**Ground One**:          Ineffective Assistance of Counsel

In support of Ground One, Petitioner argues that the trial court ruled that the victim was too little to understand the oath, but failed to determine that the child understood her duty to tell the truth or not to lie, as required under Fla. Stat. 90.605(2). Petitioner claims that the critical facts of this case depended on the victim's testimony and her testimony was inconsistent with prior statements. He asserts that under Florida law, the proper test for determining the testimonial competence of an infant witness is intelligence, not age, and whether the child possesses the sense of obligation to tell the truth. Petitioner contends that,

had counsel objected, the court would have had to make a factual finding that the victim possessed the sense of obligation to tell the truth and duty not to lie. He argues that counsel's failure to object was deficient performance resulting in prejudice to Petitioner's right to a fair trial and due process (by allowing the jury to base its verdict on unreliable evidence) and his right to full and fair appellate review of this claim.

In summarily denying this ground, by order rendered June 20, 2002, the post-conviction court held, in relevant part:

> In ground one of his Motion, Defendant claims that his trial counsel was ineffective for failing to object and to preserve the issue of permitting Ada Adorno to testify under §90.605(2) without taking an oath when the Court made no finding that this child understood the duty to tell the truth in violation of Defendant's rights to the 5th, 6th and 14th Amendments to the United States Constitution.

> Defendant alleges that the Court erred when it failed to swear in Ada Adorno who was eight years old at the time, based on the fact that she was too little to understand the oath, and that counsel should have objected to this error. As a result, Defendant contends that the Court's decision fell below the standard set forth by section 90.605(2) which requires that the Court determine whether "the child understood the duty to tell the truth or the duty not to lie." Defendant alleges that the facts in this case are dependent on witness observations and her ability to recall and recount these observations accurately.

> Defendant provided that with the exception of Ada's challenged out-of-court statements which were very inconsistent, that the record contained no evidence corroborative of the allegations of sexual misconduct. Defendant described trial testimony from Manerva (Ada's sister), Wilkes, Officer Garboski, and Cecilia Munoz (Ada's mother) to support his claim that the Court should have made a finding as to Ada's understanding of her duty to tell the truth or her duty not to lie, since she was not administered the oath to tell the truth before testifying.

Defendant next described the current standard for determining testimonial competence of an infant witness which relates to more of a consideration of his or her intelligence, rather than age, and in addition, whether the child possesses a sense of obligation to tell the truth.

Under current Florida law, the primary test of "testimonial competence of an infant witness is his or her intelligence, rather than his or her age, and, in addition, whether the child possesses a sense of obligation to tell the truth." Griffin v. State, 526 So.2d 752,753 (Fla. 1 DCA 1988); citing Lloyd v. State, 524 So.2d at 400 (Fla. 1988); Bell v. State, 93 So.2d 575, 577 (Fla.1957); McKinnies v. State, 315 So.2d 211 (Fla. 1st DCA 1975); Garrard v. State, 335 So.2d 603 (Fla. 3d DCA 1976), cert. denied, 342 So.2d 1101 (Fla.1977); Harrold v. Schluep, 264 So.2d 431 (Fla. 4th DCA 1972). Therefore, when a child's competency is at issue, the trial court should consider (1) whether the child is capable of observing and recollecting facts, (2) whether the child is capable of narrating those facts to the court or to a jury, and (3) whether the child has a moral sense of the obligation to tell the truth. Lloyd, 524 So.2d at 400, citing Williams v State, 400 So.2d 471(Fla. 5th DCA), affirmed, 406 So.2d 1115 (Fla.1981). See also Kentucky v. Stincer, 482 U.S. 730, 107 S.Ct. 2658, 2665, 96 L.Ed.2d 631 (1987), cert. denied, --- U.S. ----, 108 S.Ct. 1234, 99 L.Ed.2d 433 (1988).

It is well settled that a trial court is accorded a wide discretion in determining a child's competency as a witness, and that absent an abuse of discretion, the trial court's decision will not be disturbed. Lloyd, 524 So.2d at 400; Rutledge v. State, 374 So.2d 975, 979 (Fla.1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980); Bell v. State, 93 So.2d at 577; Begley v. State, 483 So.2d 70, 72 (Fla. 4th DCA 1986); In the Interest of M.A, 477 So.2d 47, 48 (Fla. 4th DCA 1985); Davis v. State, 348 So.2d1 228, 1229-1230 (Fla. 3d DCA 1977), cert. denied, 358 So.2d 134 (Fla.1978).

Section 90.605(2) provides that "in the court's discretion, a child may testify without taking the oath if the court determines the child understands the duty to tell the truth or the duty not to lie." Florida Statutes 90.605(2) (Fla. Stat. 1997). A Court may admit a child's unsworn testimony, usually after employing a series of simple, direct questions to determine the child's competency. For example," [c]hildren are often asked their names, where they go to school, how old they are, whether they know who the judge is, whether they know what a lie is, and whether they know what happens when one tells a lie." Kentucky v. Stincer, 107 S.Ct. at 2665, citing Morey, Competency of Child Victim, 40 U.Miami L.Rev. 245, 263, and n. 78 (1985).

A review of the Trial Transcript reveals:

The State:     And the State will next call Ada Adorno.

The Court:     Charlotte, Ada Adorno, please. Thanks.

Counsel:       Excuse me, Judge, may we approach before Ms. Corces starts?

The Court:     Yeah. Sure.

BENCH CONFERENCE COMMENCED

The Court:     I didn't bother having her sworn in, you can establish that she understands or she doesn't, but this oath, she's just too little to understand the oath.

(See Trial Transcript, pages 83-84, attached).

It is clear from the Trial Transcript that the Court felt that Ada Adorno was too young to be administered the oath before her direct examination. However, the State exercised caution to insure that this witness was questioned about her name, her age, whether or not she was in school and what grade she would be in, her address, who she lived with, and her sister's name. (See Trial Transcript, pages 85-87, attached). In addition, the State also asked Ada Adorno a "couple of questions about the difference between the truth and a lie," and the State then had Ada Adorno explain to the Court what she understood to be the difference between the two. (See Trial Transcript, pages 87-88, attached).

Based upon the Trial Transcript, this Court is convinced that counsel was not deficient for failing to object when the Court permitted Ada Adorno to testify without being administered the oath. It is clear from the Trial Transcript that the Court felt that Ada Adorno, an eight year old child at the time of the trial, was too young to understand this oath, and that the State satisfied the standard — established pursuant to Florida law to determine the competency of an infant witness. Since counsel did not act deficiently under Strickland, it is unnecessary to address whether any prejudice existed.

The Court must deny ground one of Defendant's Motion. As such, no relief is warranted.

\* \* \*

Pet. Ex. A at 3-6.

The issue presented is whether the trial court properly allowed the child witness to testify without taking the oath as provided by Florida Statute 90.605(2) – an issue of state law. The state appellate court decided that state law was properly applied and per curiam affirmed without written decision. State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1549 (11th Cir. 1997). Since the Florida courts rejected Petitioner's underlying state law arguments and denied his claim of ineffective assistance, Petitioner is unable to demonstrate that his counsel was deficient, under <u>Stickland</u>, for failing to object when the Court permitted Ada Adorno to testify without being administered the oath. Even if his trial counsel had objected as proposed, the state court would have properly overruled the objection.

The state's findings resulted in a reasonable application of <u>Strickland</u> under either prong and a reasonable determination of the facts in light of the evidence. Therefore, Ground One will be denied.

**<u>Ground Two</u>**:        Ineffective Assistance of Counsel

In support of Ground Two, Petitioner claims that, during trial, counsel never requested critical files to be admitted into evidence that involved similar sexual abuse allegations made by the same victims against a different defendant a year before the instant case against Petitioner. According to Petitioner, the Rape Shield Law exception under Fla. Stat.

794.022(2) would have provided the jury with an alternative explanation for the victim's knowledge of sexual acts. Coupled with counsel's failure to object to the prosecutor's statements during closing (regarding the victim's prior lack of knowledge of sexual acts), Petitioner asserts that the jury concluded that the victim's knowledge of sexual acts resulted solely from the alleged encounter with the Petitioner.

He argues that because counsel never provided the court with a basis for admission of this evidence, Petitioner was unable to rebut this evidence by showing that there could have been another cause for the victim's knowledge. Further, had counsel objected, this claim would have been properly preserved for the record. Petitioner believes that Counsel's omissions constituted deficient performance and prejudiced Petitioner's right to a fair trial, due process, and his right to a full and fair appellate review of this claim.

The post-conviction court entertained this issue and addressed it in detail. In denying this ground after an evidentiary hearing, by order rendered October 27, 2005, the post-conviction court held, in relevant part, as follows:

> On September 16, 1998, the Court addressed the State's Motion in Limine, in which the State requested the Court to prohibit the defense and all of its witnesses to refrain from mentioning (1) any prior H.R.S. investigation of Cecilia Muniz or Pablo Muniz, and (2) Larry Hill and any prior allegation Larry Hill molested either victim previously to the charged offense. (See State's First Motion in Limine, attached). In her argument to the Court against granting the State's Motion, Ms. Dietsch said that she could raise the issue to the jury, 'Because, Judge, I'm allowed to show that there's a possibility that someone else committed the crime and put reasonable doubt in the jury's mind. And that's exactly what I would be trying to use this information for. It's to show that —that, in fact, someone else could've done it and maybe it was Pablo Munez, the person—you know, a-- a-- anoth-- a new boyfriend or a new husband. . . . Whether or not a jury buys that, Judge, that is their call;

but I definitely wanna be able to pursue that matter, if I choose to pursue that matter." (See motion hearing transcript, Sept. 16. 1998, p. 120, L11 — p. 121, L5).

> Ms. Corces replied,
>
> . . . . The defense in attempting to identify somebody else as the perpetrator, would still have to comply with the dictates of Williams rule; it's like a reverse Williams rule requirement. And under Savino versus State, they still have to comply with all of those things that would be necessary, as though the state was attempting to introduce that evidence to establish identity. So it's irrelevant because the girls aren't claiming Pablo Muniz did this, the girl's [sic] were three and four years old with the situation involving Mr. Hill, which is the other part of my motion in limine.
>
> And, frankly, I don't think the girl's [sic] have any recollection of Mr. Hill at all and any allegations of sexual abuse. So it's very clear that they are distinguishing Mr. Gonazlez and not a situation in which they are intermingling other possible suspects.
>
> So any evidence involving Mr. Muniz and Mr. Hill are [sic] irrelevant; it's only going to result in confusion of the issues; and it certainly doesn't comply with the, um, reverse Williams rule requirements.

(See motion hearing transcript, Sept. 16, 1998, p. 121, L12 — p. 122, L16).

The Court stated that the Defense could not use Pablo Muniz because, "I think that's, quite frankly out of reach. Um, I'm a little concerned about Larry Hill, because I don't see why you don't have to meet the standards that Ms. Corces has indicated are required under Savino. So you wanna tell me why you don't think you have to meet them?" (See motion hearing transcript. Sept. 16. 1998, p. 127, L7-15).

Ms. Dietsch responded that she did not have an answer to that, and she would just offer into evidence another episode that happened.. not about bad character, but about a whole other issue. (See motion hearing transcript, Sept. 16, 1998, p. 127, L16-25). The Court answered, "Right. It's a whole other unrelated incident that --. --has no bearing on whether or not his man is guilty

or not . . . so I'm gonna tell you now that you can't get into Larry Hill either." (See motion hearing transcript, Sept. 16, 1998, p. 128, Ll-16).

As previously noted [on page 7 of this Order] in the State's cross-examination of Ms. Dietsch, in response to Ms. Parker's questions regarding the prior allegations against Larry Hill, Ms. Dietsch testified that there were no police reports or no DCF [Department of Children and Families] reports saying that Larry Hill had (1) touched his penis to the girls' vaginas, (2) touched his penis to Manerva's mouth, (3) touched his penis to Ada's anus, (4) forced Manerva to touch his penis, (5) kissed Manerva's breast, (6) touched or penetrated with his penis Manerva's anus. (7) exposed his penis to the girls, or (8) contacted or touched the girls with his penis. (See evidentiary hearing transcript, p. 20, L16 - p. 21, L24). Ms. Dietsch stated, "The only allegation with regard to the vagina is that there was touching of the vagina by Larry Hill touching the children's vagina [sic]." (See evidentiary hearing transcript, p. 22, L3-5; Larry Hill abuse report, attached).

In response to Ms. Parker's questions to Ms. Dietsch about her preparation for Defendant's trial. Ms. Dietsch testified that she had copies of the witnesses' depositions, had copies of the taped Children's Advocacy Center (CAC) interviews, maybe had copies of those transcripts available, and had a copy of the Larry Hill Abuse Report, and she reviewed them all. (See evidentiary hearing transcript, p. 22, L8 - p.24, L5). When asked if the reporter information from the Abuse Report was an accurate representation of the facts pertaining to the Larry Hill allegations. Ms. Dietsch replied in the affirmative. (See evidentiary hearing transcript, p. 24, L6-9).

With regard to Ada's pre-trial deposition taken in July, 1998, Ms. Parker asked Ms. Dietsch if she recalled that Ada testified that she had no recollection of anyone, other than Defendant, ever abusing her. Ms. Dietsch also stated that Ada was only three years old, and Manerva was four years old when Larry Hill molested them. (See evidentiary hearing transcript. p. 24. L18 - p. 25, L4).

The Court notes that with one exception, count six — Lewd and Lascivious Act on a Child (touching or rubbing Ada's breasts), all of the acts Larry Hill committed upon the victims are significantly different than the acts Defendant committed upon them. The Court granted the defense's motion for judgment of acquittal on count six. Therefore, after considering the State's comments made during closing arguments, taken both individually and collectively, this Court finds that the "allegedly improper comments do not rise

to the level of fundamental error. <u>See</u> <u>Sochor v. State</u>, 619 So. 2d 285, 290 (Fla. 18 1993)." <u>McDonald v. State</u>, 743 So. 2d 501, 505 (Fla. 1999).

**Ineffective Assistance of Counsel**

"The test to be applied by the trial court when evaluating an ineffectiveness claim is two-pronged: The defendant must show both that trial counsel's performance was deficient and that the defendant was prejudiced by the deficiency." <u>Washington v. State</u>, 835 So. 2d 1083, 1085 (Fla. 2002), <u>citing</u> <u>Bruno v. State</u>, 807 So. 2d 55, 61-2 (Fla. 2001).

**Prong one — deficient performance**

Defendant must first show that his counsel's performance was deficient. That requires showing that his counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

As stated above, Ms. Dietsch admitted that she failed to object to the State's closing arguments, and as a result of that failure, the issue was not preserved for appeal. Therefore, the Court concludes that Ms. Dietsch's performance was deficient.

**Prong two — deficient performance caused prejudice**

As to prong two, Defendant must show that the deficient performance caused him to be prejudiced, and that his counsel's errors were so serious, he was deprived of a fair trial, i.e. counsel's errors effected the outcome of the trial . . . a trial whose result is reliable.

The State's comments to which Defendant refers are the comments pertaining to where the minor victims got their knowledge of the sex acts, the taste of semen, and the physical appearance of a penis. If, for instance, Ms. Dietsch had objected, the Court could have overruled the objection, and the outcome of the trial most likely would have been the same. If the Court had sustained Ms. Dietsch's objection, Ms. Dietsch could have asked for a curative instruction, and still, the outcome of the trial most likely would have remained the same. Ms. Dietsch could have also moved for a mistrial, but given the facts and evidence presented, the Court would most likely have denied the motion.

Among other witnesses, the State presented as evidence the testimony of the two minor victims, as well as the semen-stained white handkerchief and the magazine featuring nude women that Manerva had described. Manerva also testified and described the taste of semen and the physical appearance of Defendant's penis during her testimony. Even if, the State had never mentioned or inquired about the source of the children's knowledge of the sex acts, semen taste, magazine, handkerchief, the jurors, themselves, would have wondered where the children got their advance knowledge of sexual activities. Having reached a guilty verdict on all counts, except count six, it is very clear to this Court that the jury found the victims' testimony, along with that of the other State's witnesses, as well as the tangible evidence, to be most credible.

Therefore, this Court finds that even though Defendant's counsel's failure to object to the State's closing argument amounted to deficient performance, any prejudice Defendant suffered was slight and would not have changed the outcome of his trial. Furthermore it does not rise to the level required under Strickland to merit relief. See Brown v. State, 846 So. 2d 1114, 1122 (Fla. 2003).

It is therefore ORDERED AND ADJUDGED that ground 1 of Defendant's Motion is hereby DENIED.

* * *

Pet. Ex. C at 17-23.

On appeal, the state appellate court affirmed on all but one of the claims and remanded the case to the trial court to address Petitioner's allegation regarding his counsel's failure to object to a portion of the state's closing argument. The trial court issued an order denying the ground. On appeal from the trial court's denial, the state appellate court found the trial court's order insufficient to refute Petitioner's allegation on that ground and ordered an evidentiary hearing. After holding an evidentiary hearing, the trial court affirmed the denial. On appeal from the trial court's affirmance, the state appellate court per curiam affirmed without written decision. Petitioner fails to provide clear and convincing evidence

to refute the presumption in favor of the state court's decision.  28 U.S.C. § 2254(e)(1).

The post conviction court made a detailed analysis of this issue under <u>Strickland</u>. Petitioner's trial counsel did object to the state's motion in limine but was overruled for several reasons.  First, Ada and her sister, Manerva, were only three or four years of age when the prior abuses occurred.  Ada's testimony revealed that she had no recollection of anyone, other than Petitioner, ever abusing her. Second, with the exception of touching or rubbing Ada's breasts, all of the acts Larry Hill committed upon the victims are significantly different than the acts Petitioner committed upon them.  Third, even if his trial counsel had objected as proposed, at most, the Petitioner would have received a curative instruction, which would have no impact on the verdict.   Had counsel requested a mistrial, it too would have been properly denied and would have had no impact on the verdict.

Lastly, even if the court had admitted evidence of prior abuses on the victims, which might have explained the children's knowledge of sex acts including the taste of semen and the physical appearance of a penis, it would not have explained the children's recollection of Petitioner ejaculating into a white handkerchief which was corroborated by DNA evidence.

With these understandings, the Rape Shield Law exception under Fla. Stat. 794.022(2) would not have allowed the Petitioner to introduce the proposed alternative theories, as they would not first establish to the court that such evidence may prove that the defendant was not the source of the semen, pregnancy, injury, or disease; or, establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case

that it is relevant to the issue of consent.

The post-conviction court's findings resulted in a reasonable application of <u>Strickland</u> under either prong and a reasonable determination of the facts in light of the evidence. Therefore, Ground Two will be denied.

**Ground Three**:        Ineffective Assistance of Counsel

In support of Ground Three, Petitioner asserts that, as a foreign national of Cuba, his counsel's failure to inform him of his rights under the Vienna Convention on Consular Relations placed Petitioner at a severe disadvantage because he was unfamiliar with U.S. police policies and criminal proceedings. As a result, Petitioner alleges that the arresting officers went to his house, banged on his door, and conducted an illegal search. Petitioner contends that had he been informed of his right to his diplomatic representative from Cuba, his consular could have explained to Petitioner his right to say 'no' to the illegal search. He argues that counsel's omissions constitute deficiency and resulted in prejudice against Petitioner's right to a fair trial, due process, and a full and fair appellate review of this claim.

In summarily denying this ground, by order rendered June 20, 2002, the post-conviction court held, in relevant part, as follows:

> In ground three of his Motion, Defendant asserts that his trial counsel was ineffective when counsel failed to bring to the Court's attention that the law enforcement officers, and the government failed to inform Defendant, who is a foreign national, of his right to consult with the consular or diplomatic officer of his country in violation of the treaties of the United States and the 5th, 6th, and 14th Amendments to the United States Constitution. Specifically, Defendant asserts that he is a foreign national, born in Cuba which has a legal system that differs significantly from the American system. Defendant alleges that the government and law enforcement officers failed to inform him of his

right under the Vienna Convention on Consular Relations, Apr. 24, at 963, Art. 36(1)(a), 21 U.S.T. 77, #100-101, 596 U.N.T.S. at 261, 292, to consult with a consular or diplomatic officer of his country.

Defendant argues that he was placed at a severe disadvantage because he was unfamiliar with the United States police policies and criminal proceedings. Defendant cites to U.S. v. Lombera-Camorlinga, 206 F.3d 882 (9th Cir. 2000), in support of his argument.

Defendant also claims that he was prejudiced from his inability to consult with a consular officer from Cuba. Defendant states that if he had proper access to his diplomatic officer from Cuba, the consulate could have explained to him that in the United States Defendant had the right to say "no" to the illegal search that was conducted by the arresting officers without a search warrant, and that he was not going to be murdered or tortured if he did not consent to the search. As a result, Defendant argues that based on the provisions of the Vienna Convention, his individual rights were violated, and that counsel was ineffective for failing to bring the treaty violation to the Court's attention.

The Court finds that Defendant's reliance on the Vienna Convention is misplaced. It is clear that Defendant has failed to establish that he has standing to raise a claim under the Vienna Convention, as treaties are between countries, not citizens. Maharaj v. State, 778 So. 2d 944 (Fla. 2000). It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved. Matta-Ballesteros v. Hennian, 896 F.2d 255 (7th Cir. 1990). "Even where a treaty provides certain benefits for nationals of a particular state--such as fishing rights--it is traditionally held that 'any rights arising from such provisions are, under international law, those of states and . . . individual rights are only derivative through the states." United States ex rel. Luian v. Gengler, 510 F.2d 62, 67 (2d Cir.), cert. denied, 421 U.S. 1001, 44 L. Ed. 2d 668, 95 S. Court. 2400 (1975) (quoting Restatement (Second) of the Foreign Relations Law of the United States § 115, comment e (1965)).

Treaties are "designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress." United States v. Zabaneh, 837 F.2d 1249, 1261 (5th Cir. 1988); United States v. Cadena, 585 F.2d 1252, 1261(5th Cir. 1979); United States v. Davis, 767 F.2d 1025, 1030(2nd Cir. 1985); United States v. Cordero, 668 F.2d 32,37-38(1st Cir. 1981); United States v.

<u>Valot</u>, 625 F.2d 308, 310  (9th Cir. 1980).

       In this case, while Defendant as a foreign national may have certain rights arising from the provisions of the Vienna Convention, under international law these rights are only derivative through the Cuban government. It is up to the Cuban government to determine whether a violation of sovereign interests occurred and requires redress. Since Defendant fails to demonstrate that the government of Cuba has made an official protest in support of his claim, this Court must deny ground three of this Motion. As such, no relief is warranted.

* * *

Pet. Ex. A at 10-12.  The post-conviction court's order was affirmed on appeal.

       This ground fails scrutiny under <u>Strickland's</u> prejudice prong. Petitioner did not provide any support in his rule 3.850 motion demonstrating that his consulate could have provided any assistance not provided by his trial counsel.  Any alleged conception of what his consulate would have or could have advised him is pure speculation.

       Additionally, at the time of Petitioner's trial judgment became final, neither the U.S. Supreme Court nor the Florida Supreme Court had held that Article 36 of the Vienna Convention provided enforceable individual rights of consular notification.  In fact, the Eleventh Circuit has held that the Vienna Convention was not intended to benefit individuals, <u>see</u> <u>United States v. Duarte-Acero</u>, 296 F.3d 1277, 1281 (11th Cir. 2002), and does not prescribe specific remedies for violations, see <u>Sanches-Llamas v. Oregon</u>, 126 S.Ct. 2669, 2678 (2006).  Rather, implementation of Article 36 is left to state law. <u>See</u> <u>Sanches-Llamas</u>, 126 S.Ct. at 2678.  Petitioner fails to provide support demonstrating that the state court would have excluded evidence based on a lack of notice of Article 36 of the Vienna Convention.

Thus, even if counsel had informed Petitioner of his rights under Article 36 of the Vienna Convention, there is no reasonable probability of a different outcome.

The post-conviction court's findings resulted in a reasonable application of <u>Strickland</u> under either prong and a reasonable determination of the facts in light of the evidence. Therefore, Ground Three will be denied.

**Ground Four**:    Ineffective Assistance of Counsel

In support of Ground Four, Petitioner asserts that the state filed notice of its intent to introduce hearsay statements made by the victim and defense counsel failed to respond with a motion in limine. Petitioner also claims that counsel failed to contemporaneously object to the hearsay evidence when it was presented during trial. Petitioner acknowledges that the court held a hearing on this issue and determined that the statements made by the victims were reliable and admissible pursuant to Fla. Stat. 90.803(23). However, Petitioner contends that the court's order is insufficient to satisfy the requirements of the statute as delineated. Petitioner believes that counsel's omissions constitute deficient performance and prejudiced Petitioner's right to a fair trial, due process, and his right to a full and fair appellate review of this claim.

In summarily denying this ground, by order rendered June 20, 2002, the post-conviction court held, in relevant part, as follows:

> In ground four (a) of his Motion, Defendant argues that counsel was ineffective when counsel failed to file a timely Motion in Limine, and/or failed to object to the Court's error when it allowed the hearsay statements of the alleged victims to be admitted into evidence in violation of the U.S. Constitution. Specifically, Defendant asserts that prior to trial after the State

filed notice of its intent to introduce certain hearsay statements made by the Adorno sisters relating to the offense charged, that counsel failed to respond with a Motion in Limine. Defendant alleges that counsel should have contended that these hearsay statements would have been inconsistent with each other and with the other evidence presented at trial, and that the evidence which would have resulted lacked trustworthiness and reliability. In addition, Defendant claims that the probative value of admitting this evidence would have substantially outweighed the danger of unfair prejudice, confusion of the issues, and may have even possibly misled the jury.

After reviewing the Motion Hearing Transcript from September 16, 1998, the Court finds that counsel was not deficient for failing to file a Motion in Limine and/or object to the hearsay statements of the alleged victims which the State sought to have entered into evidence. (<u>See</u> Motion Hearing Transcript, attached). The Transcript indicates that counsel did in fact object to the introduction of this evidence. In addition, the Motion Hearing Transcript shows that counsel argued that the State failed to present any evidence that would lay the proper foundation of whether or not the Adorno sisters were able to testify truthfully, whether they understood what they were talking about, and the difference between telling the truth and lying. (<u>See</u> Motion Hearing Transcript, page 105, attached). Counsel contended that no testimony existed regarding the type of questions that were posed to the children, and counsel also asserted that no tape recording of the interview could be offered into evidence. Next, counsel described the numerous inconsistencies that existed in the children's testimony and explained how these inconsistencies had the potential of impacting the quality of the testimony elicited from the children. (<u>See</u> Motion Hearing Transcript, pages 110-113, attached).

Based upon the Motion Hearing Transcript, counsel did not act deficiently for failing to object or file a Motion in Limine to having the hearsay statements of the children entered into evidence. As Defendant has failed to establish deficient conduct under <u>Strickland</u>, it is unnecessary to address whether any prejudice existed. As such, no relief is warranted.

In ground four (b) of his Motion, Defendant argues that counsel failed to contemporaneously object to the hearsay evidence when it was presented during the trial. Defendant adds that counsel's failure to object precluded proper appellate review and violated Defendant's Constitutional rights. Defendant alleges that had counsel made an effort to challenge, this evidence that the outcome of the trial would have been different.

In any claim based on counsel's failure to object at trial, the defendant must show that counsel had "no excuse for overlooking the objection" and the outcome of the trial "likely would have been different had the objection been made." Rhue v. State, 603 So. 2d 613 (Fla. 2d DCA 1988).

Even assuming trial counsel was deficient for failing to object to the hearsay evidence that Defendant alleges, Defendant has not shown that this alleged error was so serious as to create a reasonable probability that the outcome of the trial would have been different in view of the other evidence. Defendant has failed to satisfy the second prong of Strickland by failing to establish prejudice. With no prejudice established, it is unnecessary to address the deficient performance prong of Strickland. The Court must deny ground four (b) of Defendant's Motion. As such, no relief is warranted.

* * *

Pet. Ex. A at 12-14. On appeal, the state district court affirmed the post-conviction court's order.

The trial transcript reflects that Counsel objected during the hearing on the state's motion in limine to enter hearsay evidence. Petitioner provides no federal law requiring counsel to either object again, as the court would have denied the objection again, or file a motion in limine to rebut a state court's evidentiary determination. Furthermore, this ground can be denied on Strickland's prejudice prong. Petitioner provides no support to raise a reasonable probability that the trial outcome would have been different even if counsel had objected.

The post-conviction court's findings resulted in a reasonable application of Strickland under either prong and a reasonable determination of the facts in light of the evidence. Therefore, Ground Four will be denied.

It is therefore ORDERED AND ADJUDGED that:

1. Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2254 (Dkt. #1) is DENIED.

2. The Clerk is to enter judgment for Respondents, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on April 14, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

F:\Docs\2007\07-cv-1081.deny 2254.wpd